29 C.C.P.A. (Patents)

## FOSS v. OGLESBY et al.

### Patent Appeal No. 4606.

Court of Customs and Patent Appeals.

April 27, 1942.

George E. Stebbins, of Pittsburgh, Pa., and Albert Grobstein, of Washington, D. C., for appellant.

Cushman, Darby & Cushman, of Washington, D. C. (John J. Darby, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding, wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention of the subject matter in issue to appellee Oglesby as sole inventor.

The interference is between a patent issued to appellant on July 20, 1937, and an application signed by Oglesby, Reilly, and Gilbert as joint inventors, filed on February 6, 1937.

Previous to the decision of the Examiner of Interferences, appellees moved to substitute a sole application of appellee Oglesby for the joint application above referred to. The motion was granted by the examiner to the extent that the sole application may be substituted in appropriate ex parte action in the event that a final judgment is entered in favor of Oglesby in this interference. No issue is here made with reference to this substitution.

Four counts are involved in the interference, appellees having copied claims corresponding to the counts from appellant's patent. Count 1 is illustrative of the subject matter in issue and reads as follows: "1. A flexible abrasive article comprising a composite backing consisting of a cellulosic sheet, a fabric sheet adhesively attached to one face of said cellulosic sheet, and a heat-hardened resin intermingled with the fibers of said fabric in a quantity sufficient to provide the same with a relatively brittle characteristic and a layer of abrasive particles adhesively attached to the face of said fabric."

The involved invention relates to abrasive articles, principally in the form of discs, used for grinding surfaces such as welds of automobile bodies. In use the disc is pressed at a slight angle against the work surface to be ground. Abrasive discs are old and are commonly made with a backing sheet of vulcanized fiber connected with a textile fabric by an adhesive substance; a layer of abrasive particles is adhesively attached to the face of the cloth.

The particular improvement here involved lies in intermingling with the fibers of the textile fabric a sufficient quantity of heat-hardened resin to render the textile fabric relatively brittle and shearable.

Appellant moved to dissolve the interference upon the ground that the application of appellees does not disclose the subject matter of the counts. The Primary Examiner denied the motion to dissolve, holding that, while appellees' application does not expressly disclose the brittleness of the cloth or its shearability, the description in appellees' application is sufficient to meet the requirements of the counts.

Thereafter each of the parties filed a preliminary statement.

■ Appellant introduced no evidence and is therefore confined to the date of his application, July 8, 1936, for conception and reduction to practice of the invention.

It is conceded by appellant that if the application of appellees discloses the involved invention, the appellee Oglesby, under the evidence introduced, is entitled to the award of priority of invention. Therefore, the only question before us is whether the application of appellees discloses the invention.

It is the claim of appellees that, while the brittleness of the discs and their shearability is not expressly referred to' in their application, these characteristics are inherent in the product described therein.

Inasmuch as appellees took testimony upon this point, the Examiner of Interferences also considered the right of appellees to make the counts and, like the Primary Examiner, held that appellees' disclosure is sufficient to meet the requirements of the counts. His decision upon this point states: "It is believed to be quite clear from the evidence that discs made substantially in accordance with the disclosure in the Oglesby et al. application possess the characteristics required by the counts. It is also quite clear that brittleness was an inherent characteristic of such discs. It is further established that, while this brittleness was in some instances objected to, Oglesby and his associates at the Behr-Manning Corporation concluded that it was impractical to change the discs in any way to reduce the brittleness. The record is also clear that they never did so change the character of their product."

The examiner found that appellee Oglesby was the sole inventor, and therefore awarded priority of invention to him.

The Board of Appeals in its decision held that the subject matter of the counts is inherent in appellees' disclosure, and affirmed the decision of the examiner.

Appellees were all employees of the Behr-Manning Corporation, to whom their application has been assigned. Appellee Oglesby was technical director of the corporation, which had been engaged in making abrading discs in which glue was used as an adhesive. Oglesby, not later than 1935, conceived the substitution of water-proof synthetic resins for glue as the adhesive. He testified that in 1933 he experimented with synthetic resins for that purpose and sent to the officials of the corporation a memorandum upon the subject, which memorandum was introduced in evidence. In the early part of the year 1935 Oglesby directed one of his assistants, Gilbert, to work upon the problem of producing fiber cloth combination discs using synthetic resins produced by the Bakelite corporation as the adhesive.

In May, 1935, the Behr-Manning Corporation began manufacturing abrasive discs using Bakelite resins. These discs were made by uniting a fiber sheet and a cloth layer with a heat-hardenable resin. Abrasive grains were then secured to the cloth layer by means of a bonding adhesive also of heat-hardenable resin. After the grains

were applied, the resins were cured or hardened by a suitable heat treatment.

It was established that abrading discs made as above stated were sold to the Fisher Body Company of St. Louis beginning June 10, 1935, and to the Briggs Manufacturing Company of Detroit beginning June 19, 1935. Sales continued thereafter and the Behr-Manning Corporation was, at the time of taking the testimony herein, still manufacturing and selling discs of substantially the same characteristics.

Samples of the discs made as aforesaid were introduced in evidence by appellees; most, if not all, of these discs respond to the counts here in issue.

Appellant makes two contentions with regard to these discs:

1. That it was not established that such discs were made in accordance with the disclosure of appellees' application, and

2. That the testimony on behalf of appellees shows that brittleness in the discs was considered objectionable, and that the disclosure of appellees' application contains directions for avoiding brittleness, which are exactly the opposite of the directions in appellant's patent; that any brittleness in the discs so produced by appellee was purely accidental, and that appellees had no conception of the issue here involved.

The Examiner of Interferences held, as hereinbefore quoted, that the discs made in 1935 were substantially in accordance with the disclosure of appellees' application and possess the characteristics required by the counts.

■ The Board of Appeals did not expressly affirm this view of the Examiner of Interferences, but its general affirmance of the examiner's decision has the effect of affirmance of said holding of the examiner. In re Wagenhorst, 64 F.2d 780, 20 C.C.P.A., Patents, 991.

The application of appellees contains the following:

"As stated before, while my adhesive for holding the grits has high tensile strength above 6,000, usually 8,000 to 14,000 lbs. per square inch or more, and while it is relatively tough, it is sufficiently inflexible and brittle, that is, of the nature to permit mechanical flexing without material injury to the union between the grits and the adhesive or the union between the adhesive and the reinforcing backing. The products made according to this invention may be used without flexing or may be mechanically flexed as above described, * * *.

*　　*　　*　　*　　*

"In the case of our laminated backing, there is little penetration of the resinous adhesive into the paper or vulcanized fiber laminae but there is considerable penetration of the cloth lamina used by way of illustration by both the adhesive used to join the laminae and the adhesive used to bond the *grits*. In many cases, there is a commingling of the laminating adhesive and the grit holding adhesive within the cloth lamina. Penetration of the grit holding adhesive into the cloth insures rigid bonding of the grits to the laminated backing. Since there is no substantial penetration of the *paper* or *vulcanized fiber* by the resinous adhesives, there is no embrittling of these materials due to impregnation." (Italics ours.)

The application further states that the abrasive material is cut "into conventional belts, sheets, disc-shapes or any other form that it is desired to produce as an abrasive article."

Original claim 11 of appellees' application reads as follows: "11. A coated abrasive having a backing composed of laminations of paper-like material and fabric united by a synthetic resinous adhesive, and a surface layer of grits united to the backing by a synthetic resinous adhesive, said adhesives being compatible and combining through penetration of one of said layers to form a substantially homogeneous bond."

■ It is, of course, elementary that original claims in an application as filed constitute a part of the disclosure of such application.

The Board of Appeals in its decision stated:

"The question as stated by Foss is whether the Oglesby et al. application, as originally filed, discloses the abrasive article defined by the counts. Foss emphasizes that he uses five coating operations to three for Carlton or Oglesby. However, Foss uses a heavy drill cloth and would need more resin if the impregnated cloth were to be made brittle.

"Oglesby et al. refer to the brittle resin, page 8, lines 25 to 30, as sufficiently *inflexible* without material injury to the union between the grits and adhesive or between the adhesive and the reinforcing backing. Oglesby et al. may use 22 pounds of their No. 1 adhesive per ream (page 30, line 15) for the abrasive receiving coat on cloth

which weighs a little less than ½ pound per yard, 14 inches wide.

"The Foss fabric is considerably heavier and based on a 14-inch width it should weigh 1¼ pounds per yard and in the Foss coating analogous to the one referred to above by Oglesby, Foss employs 22 pounds per ream which is less than one-half as much resin used by Oglesby et al. for this purpose when computed on the basis of the weight of the fabric.

"In coating the opposite face of the fabric, Foss uses ten pounds of liquid per ream (page 4, line 21) and Oglesby et al. use twelve pounds per ream on a much lighter fabric.

"Foss later (page 5, line 22) adds six pounds per ream as an adhesive, but up to this point the fabric of Oglesby et al. contains probably more resin than the Foss fabric per unit weight. The difference between the two fabrics one way or another as to the amount of resin used when considering the fabric used by each party does not appear to be critical. There is certainly nothing in the Foss specification to indicate exactly what resin is being used but in the foregoing estimates as the comparative amounts of resin used by the parties, we assume some liquid resin of the nature disclosed by Oglesby et al.

"Foss then coats an already coated side of the fabric with resin at the rate of six pounds per ream, which resin is applied to the vulcanized fiber backing. Some of this resin goes into the fabric.

"To apply the abrasive, Foss uses twenty-two lbs. to the ream of liquid resin with added powdered A-stage resin. This resin is stated to further fill the fabric.

"With all the operations employed by Foss, it is doubtful if he actually uses more resin per unit of fabric weight than do Oglesby et al.

"In our opinion, page 3, lines 5 to 15, page 35, lines 25 to 31 and original claim 11 of Oglesby et al. indicate that they had substantially the same type of impregnated fabric as did Foss and the resin of Oglesby et al. being brittle, will crack or shear just the same as the fabric of Foss. We believe Oglesby et al. used sufficient resin to satisfy the terms of the counts."

█ It appears that, during the time testimony was taken herein, one Hugh N. Dyer, Jr., an employee of the Behr-Manning Corporation, who was in charge of research on synthetic adhesives and binders, made certain abrasive discs which he testified were made in accordance with the disclosure of appellees' application, except that 140° F. was used as the coating temperature instead of 150° F. as suggested in the application. The Board of Appeals held that this trivial difference in temperature was immaterial, and we are in agreement with this holding.

These discs were introduced in evidence as Exhibits 39 and 40. Appellant does not deny that they are brittle, but complains that they are too brittle to meet the requirements of the counts. His main contention is that appellees' disclosure will produce a disc that is not sufficiently brittle to meet the requirements of the counts; but with reference to Exhibits 39 and 40 he completely changes his position and contends that if they were made according to the disclosure of appellees' application, they are excessively brittle. His only explanation of this, as stated in his brief, is that "Somewhere in the making of Exhibits 39 and 40, Dyer departed from the intent of the Oglesby et als. application because he got a stiff and brittle, not a flexible, backing material."

█ At this point it is interesting to observe that, upon the request of appellant's counsel, appellant was furnished with a sample of the cloth and samples of the resins described in appellees' application and used by the Behr-Manning Corporation in the manufacture of the discs. It is altogether unlikely that appellant did not make tests with these materials, the result of which tests, if his contention with respect to the disclosure of appellees is correct, he would have introduced in evidence. Under these circumstances, his complaint that the tests represented by Exhibits 39 and 40 were made ex parte is entitled to no consideration. We are of opinion that these exhibits respond to the involved counts.

█ We are in agreement with the Patent Office tribunals that the characteristics of relative brittleness and shearability set forth in the counts are inherent in the disclosure of appellees. While it is true that the characteristic of brittleness was not desired by appellees because they did not recognize, when their application was filed, that such property had utility, it is established that the invention for which they filed application, namely, the use of a heat-hardened resin as an adhesive in the manner set forth in the application, necessarily involved relative brittleness and shearability of the abra-

sive article. In other words, the property of relative brittleness and shearability of the discs produced in accordance with the process disclosed by appellees was inherent in that process.

In the case of Hansgirg v. Kemmer, 102 F.2d 212, 214, 26 C.C.P.A., Patents, 937, we said: "Where one copies a claim from an inadvertently issued patent it should clearly appear that his application disclosed the invention either expressly or inherently. See McKee v. Noonan, 86 F.2d 986, 24 C.C. P.A., Patents, 784; Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606. He may disclose the invention by drawings, by the use of language, or he may disclose it by reciting and teaching such subject matter as will inherently do the thing or possess the quality which is claimed for it. So it is not enough to say that Kemmer said nothing about dust removal or about a screen which would remove it if the process defined by Kemmer would inherently perform the function in the manner prescribed by the count. Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient. * * *"

In the case of Swan v. Thompson, 80 F.2d 374, 379, 23 C.C.P.A., Patents, 806, we said: "Swan, having completed the structure embodying the issue of the counts and disclosed it to others, and found it to be useful for any purpose, should not be deprived of the benefits flowing therefrom because another entering the field later has found that additional beneficial results could be obtained from it. Weis v. Woodman, 65 F.2d 274, 278, 20 C.C.P.A., Patents, 1211, 1218; In re Smith, 36 F.2d 302, 17 C.C.P. A., Patents, 644. The law in this respect is quite analogous to that declared in numerous cases to the effect that one cannot claim a patentable monopoly for an old process because with it he has been enabled to produce a new article. Brown et al. v. Piper, 91 U.S. 37, 23 L.Ed. 200; Lovell Manufacturing Co. v. Cary, 147 U.S. 623, 13 S.Ct. 472, 37 L.Ed. 307; Arlington Mfg. Co. v. Celluloid Co. [3 Cir.], 97 F. 91; In re Braselton, 51 App. D.C. 31, 273 F. 759. The courts have fre-

quently stated that a patentee is entitled to make every use of which his patent is susceptible, *whether this use was known or unknown to him*. In re Downs et al., 45 F.2d 251, 18 C.C.P.A., Patents, 803, 807; In re Metzger, 45 F.2d 918, 18 C.C.P.A., Patents, 808, 811; Braren v. Horner, 47 F.2d 358, 18 C.C.P.A., Patents, 971, 982; In re Abrahamsen, 68 F.2d 569, 21 C.C.P.A., Patents, 828, 831. * * *" (Italics ours.)

The views expressed in the above quotations are applicable here.

We think the application of appellees clearly discloses a process which, according to the evidence in the case, must result in a product possessing the characteristics set forth in the involved counts. Therefore appellees had the right to make the claims corresponding to the counts, and appellant's motion to dissolve was properly denied.

Another contention of appellant is that the Board of Appeals erred in broadly interpreting the counts. It is sufficient to say upon this point that, where the Board of Appeals gives a broad interpretation to a count, we are not at liberty to inquire whether such broad interpretation renders the count unpatentable. Vickery v. Barnhart, 118 F.2d 578, 28 C.C.P.A., Patents, 979.

It is also the general rule that the counts in an interference proceeding must be given the broadest construction which they will reasonably support.

Appellant also refers to, and prints as an appendix to his brief, a patent issued to appellee Oglesby in 1939, which, appellant contends, contradicts the contentions of appellees here made.

This patent was not certified to us as a part of the record herein, nor was it referred to in the decisions of the Patent Office tribunals; nor, so far as the record shows, was it considered by them, although the application upon which it was issued was referred to in appellees' application herein. Therefore we cannot consider said patent.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.