**RALSTON PURINA
COMPANY, Appellee,**

v.

**FAR–MAR–CO, INC., Appellant.**

**Appeal No. 84–1237.**

United States Court of Appeals,
Federal Circuit.

Sept. 19, 1985.

Jack R. Miller, Senior Circuit Judge, filed opinion dissenting in part and concurring in part.

Warren N. Williams, Schmidt, Johnson, Hovey & Williams, of Kansas City, Mo., argued for appellant. With him on brief was John M. Collins.

Randall G. Litton, Price, Heneveld, Huizenga & Cooper, of Grand Rapids, Mich., argued for appellee. With him on brief was Richard C. Cooper.

Before BALDWIN and BENNETT, Circuit Judges, and MILLER, Senior Circuit Judge.[1]

BALDWIN, Circuit Judge.

The decision of the United States District Court for the District of Kansas, holding claims 1–52 of U.S. Patent No. 3,940,495 (Flier) not invalid, and holding claims 1, 2, 8–20, 22, 23, 25, and 29–33 willfully infringed, is affirmed-in-part and reversed-in-part.

## Facts

The Flier invention is the first successful process, and resultant product, for directly and continuously restructuring oil seed particles, preferably soy particles, into a textured, chewable, fibrous, meat-like food product. Restructuring is accomplished by mechanically working defatted, moistened soy particles under elevated temperature and pressure, into a flowable, plastic mass which is expanded into the restructured, fibrous, meat-like food product by suddenly releasing the pressure. The original application was filed July 10, 1964. A continued-in-part application was filed December 9, 1966. A continuation application was filed January 17, 1973, from which the patent issued. Although the 1964 application is more properly called a grandparent application, it will be referred to as the parent for the purposes of this opinion.

---

1. The Honorable Jack R. Miller assumed senior status effective June 6, 1985.

Interference 96,355, styled *Wilding v. Flier v. Atkinson*, was declared on May 23, 1968, involving the pending patent applications of Morris Wilding (assignor to Swift and Co.), Flier (assignor to Ralston Purina Co. (Ralston)) and William T. Atkinson (assignor to Archer-Daniels-Midland Co. (ADM)). Priority was eventually awarded to Flier on August 13, 1971. The interference was appealed, but settled by a cross-licensing arrangement on April 6, 1972. The settlement agreement provided that each party would grant to any third party making a written request a nonexclusive license under the claims of any existing or future patent.

On July 9, 1973, counsel for Flier specifically advised the examiner that an ADM patent application (the Dutch publication), No. 6506477, had been published on November 22, 1965, and that it corresponded generally to the Atkinson United States patent application which had been involved in the interference. The district court found specifically that this reference was brought to the examiner's attention after discovery in June, 1973, and that it was indeed a printed publication.

Claims which correspond to claims 8, 9, and 34–52 in Flier were allowed in an office action issued April 5, 1974. Additional claims were allowed in November 1, 1974. The remaining claims were allowed June 3, 1975.

Far-Mar-Co was licensed by ADM for the product described by the patent in suit. Upon issuance of Flier, Ralston offered a license to Far-Mar-Co, which was immediately declined. Ralston filed suit in district court for patent infringement approximately sixty days after Flier issued.

## OPINION

The decisive issues in this case are:

1. Whether the trial court erred in deciding that Far-Mar-Co's burden of proof was to show by clear and convincing evidence that Flier was invalid.

2. Whether the trial court clearly erred in finding that the patent application of Archer Daniels Midland Company, No. 6506477 filed in the Patent Office of the Netherlands (Dutch publication) did not anticipate the claims of Flier.

3. Whether the trial court's finding that claims 10–13, 15–28, and 32 were descriptively supported by the parent application and thus entitled to the parent's 1964 filing date is clearly erroneous.

4. Whether the trial court's finding of willful infringement was clearly erroneous.

## *Burden of Proof*

Far-Mar-Co contends that the district court erroneously imposed upon it the burden of proving insufficient disclosure in the parent application; also, that Ralston, as the party asserting adequate disclosure, should have borne the burden of demonstrating that adequate legal support exists. Ralston, on the other hand, argues that the district court correctly placed the burden of overcoming the presumption of validity by demonstrating insufficiency of disclosure on Far-Mar-Co, and found that Far-Mar-Co had not shown by clear and convincing evidence that it had met that burden.

■■■ Far-Mar-Co incorrectly treats the burden of establishing a *prima facie* case of insufficiency of disclosure as if it bears no relationship to the burden of overcoming the presumption of validity accorded a patent under 35 U.S.C. § 282. A patent is presumed valid, and the burden of persuasion to the contrary is and remains on the party asserting invalidity. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1553, 220 USPQ 303, 313 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). In addition, the party asserting invalidity also bears the initial procedural burden of going forward to establish a legally sufficient *prima facie* case of invalidity. If this burden is met, the party relying on validity is then obligated to come forward with evidence to the contrary. Before rendering its judgment, the court must determine whether "*all* of the evidence establishes that the validity challenger so carried his burden as to have persuaded the decisionmaker that the patent can no longer be accepted as valid."

*Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885, 221 USPQ 1025, 1028 (Fed. Cir.1984). A party asserting invalidity based on 35 U.S.C. § 112 bears no less a burden and no fewer responsibilities than any other patent challenger. Far-Mar-Co's burden of proof before the district court was to show by clear and convincing evidence that Flier was invalid. *See, e.g., Pennwalt Corp. v. Akzona, Inc.*, 740 F.2d 1573, 1578, 222 USPQ 833, 836 (Fed.Cir. 1984). The district court recognized and enunciated these rules. Accordingly, we hold that it did not place an impermissible burden upon Far-Mar-Co.[2] The question of whether disclosure satisfies the written description requirement of § 112 is based on questions of fact. *See In re Wilder*, 736 F.2d 1516, 1520, 222 USPQ 369, 372 (Fed. Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985). Far-Mar-Co thus bears the burden of demonstrating that the court erred in its application of the law to the facts, *see Bose Corp. v. Consumers Union*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), or that its findings of fact were clearly erroneous.

### Anticipation

Anticipation is a factual determination, revieawable under the "clearly erroneous" standard. *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed.Cir.1984). A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the defi-

nite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 76 USPQ 430, 444 (1948); *SSIH Equipment S.A. v. USITC*, 718 F.2d 365, 381, 218 USPQ 678, 692 (Fed. Cir.1983). Anticipation requires that "all limitations of the claim are found in the reference, or 'fully met' by it." *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 772, 218 USPQ 781, 789 (Fed.Cir.1983).

Ralston contends, and the trial court found, that the Dutch publication was deficient because it failed to disclose (1) the importance of a "minor amount of fat" present during extrusion; (2) a definition for the word "plexilamellar" which was used to describe the product; and (3) the desirability of "separate zones of confinement or orifices" in the machinery used to mix and extrude the product. These findings are clearly erroneous.

The first finding is clearly erroneous because the Dutch publication specifies the same starting material claimed in Flier, and the trade defines the starting material as having low levels of fat. The publication is therefore not deficient as to this element of Flier's claims.

The second finding, that the Dutch publication does not define "plexilamellar" is unsupportable in view of the following passage from page 2 of that publication:

> The protein extrudate obtained according to the above mentioned method is a rough, resilient, dry to slightly moist to

---

**2.** Far-Mar-Co's reliance on *Wagoner v. Barger*, 463 F.2d 1377, 175 USPQ 85 (CCPA 1972), explains the vehemency with which it contends that the district court erred in assigning the burden of proof. *Wagoner* involved an interference in which the senior party owned the patent whose claims were copied to provoke the interference. With respect to the burden of proof on the issue of inherency, the court stated that "[c]learly, the burden of proving that language contained in the claims of the later application [which, in this case, were allowed to issue] is on the party asserting the equivalency ... and the burden is a heavy one." 463 F.2d at 1380, 175 USPQ at 86–87. The distinguishing feature between *Wagoner* and the present case is that *Wagoner* was an *interference.* Although the *test*

for the adequacy of disclosure is the same, whether or not the proceedings are *ex parte* or *inter partes* before the Patent and Trademark Office, or before a district court, the burdens are allocated somewhat differently in each, due to their distinctive characteristics. The objective of an interference, unlike that in a district court when invalidity is alleged, is to determine priority of invention. After being accorded senior or junior party status, with the concomitant procedural benefits (senior party) or burdens (junior party), *each* party is responsible for establishing its case for sufficiency of disclosure in a prior application if it attempts to antedate a reference under §§ 112 and 120 or 119. Hence, the rule enunciated in *Wagoner*, 463 F.2d at 1380.

the touch, open celled foamy mass made up of interlaced interconnected strips of varying width and thickness which may appear fibrous or skin-like. The majority of the cells formed by this *plexilamellar* protein structure are.... [Emphasis added.]

■ The third finding is similar to the first, and fails for a similar reason. The Dutch publication discloses the use of a standard extruder which, at the time, came equipped with the structure specified in the Flier patent. The publication is therefore not deficient as to this element of Flier's claims.

As a result of our disposition of this issue, only those claims entitled to the effective filing date, July 10, 1964, of the parent application remain in issue. The trial court held and Ralston does not contest, that claims 1–9, 14, 29–31, and 33–52 were entitled only to the effective filing date of the 1966 application. Thus, we hold these claims to be invalid for having been described in a printed publication before the invention thereof by the applicant for patent. 35 U.S.C. § 102(a).

### Description Requirement

■ The trial court held that claims 10–13, 15–28, and 32 of Flier are entitled to the effective filing date of the 1964 parent application because the parent application complies with the written description requirement of 35 U.S.C. § 112, first paragraph, which is incorporated in 35 U.S.C. § 120. Whether the description requirement is met is a question of fact reviewable under the clearly erroneous standard. *In re Wilder*, 736 F.2d 1516, 1520, 222 USPQ 369, 372 (Fed.Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985). The trial court properly recognized that the test for sufficiency of support in a parent application is whether the disclosure of the application relied upon "reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter." *In re Kaslow*, 707 F.2d 1366, 1375, 217 USPQ 1089, 1096 (Fed.Cir.1983). Precisely how close the original description must come to comply with the description requirement of 35 U.S.C. § 112 must be determined on a case-by-case basis. *In re Wilder*, 736 F.2d 1516, 1520, 222 USPQ 369, 372 (Fed.Cir.1984).

Far-Mar-Co cites several range cases to support its argument that ranges found in the applicant's claim language must correspond exactly to ranges disclosed in the parent. These cases are not in point. The facts in these cases precluded a determination that one skilled in the art could derive the claim limitations from the parent, due to a number of different factors, e.g., the unpredictable nature of the art, *In re Sichert*, 566 F.2d 1154, 196 USPQ 209 (CCPA 1977); failure to distinguish one process from another, *In re MacLean*, 454 F.2d 756, 172 USPQ 494 (CCPA 1972); the addition of a critical limitation, *In re Blaser*, 556 F.2d 534, 194 USPQ 122 (CCPA 1977); failure to define a critical term, *In re Lukach*, 442 F.2d 967, 169 USPQ 795 (CCPA 1971); and use of a list that did not contain the claimed substance. *In re Ahlbrecht*, 435 F.2d 908, 168 USPQ 293 (CCPA 1971). In addition, a predecessor to this court has held "that a claim may be broader than the specific embodiment disclosed in a specification is in itself of no moment." *In re Rasmussen*, 650 F.2d 1212, 1215, 211 USPQ 323, 326 (CCPA 1981). Far-Mar-Co argues that the claims remaining in issue contain new matter at least with respect to the protein content of the starting material, total and added moisture, temperature ranges, and the situs of fiber formation. Far-Mar-Co contends that although the 1964 parent application would enable one skilled in the art to practice the invention claimed, it does not meet the description requirement under 35 U.S.C. § 112.

With respect to protein content, Far-Mar-Co argues that the claim language "protein content of at least about that of solvent extracted soybean meal" is not supported by the language of the parent application, which speaks of "soybean meal having a low fat and high protein content." The parent application also states that "[s]uch 50% protein soybean meal is well known and frequently is a by-product of the process of oil extraction from soybeans. Such meal is preferably solvent extracted to de-

crease the fat content thereof to the range mentioned above." Further, "[s]oybean meal having a protein content of approximately 50% is the preferred meal component for use in the present invention. When, however, the meal has a protein content of substantially less than 50%, it may be mixed with a high protein component which will increase the protein content of the combination to the preferred 50%."

■ The trial court found that the parent disclosure does support the claim language, based on the 1964 disclosure and on consideration of the knowledge possessed by those skilled in the art of extrusion of both farinaceous and proteinaceous vegetable materials in 1964. The trial court found that soybean meal of 44%, 50%, 70%, and 90% protein were standard, available commodities in 1964. The trial court also found that the parent, which disclosed a "high protein content" and a preferred lower level but no upper limit, and indicated that protein content could be adjusted, reasonably conveyed adjustment of the protein content of soybean meal to levels above 50%. Having considered Far-Mar-Co's arguments, we conclude that the court did not clearly err in determining that the parent's disclosure adequately supports the protein content of the claims in issue.

■ With respect to temperature, Far-Mar-Co argues that the claim limitation "in excess of 212° F" and "substantially above 212° F" are not supported by the parent application. The trial court found that experts from both parties were in substantial agreement that the parent application sets the critical lower limit for temperature at 212° F and supports this limit in the patent claims. The trial court considered evidence of what the skilled artisan would appreciate about the sources of heat in the process, both steam heat and the pressure brought to bear on the mixture, as well as the limitations of the equipment disclosed. The trial court also noted that Far-Mar-Co's expert agreed that the claim language calling for the temperature "being increased substantially" found support in the parent application. On the basis of this record, it was not clear error for the court to find sufficient disclosure in the parent application for the above-mentioned limitations.

■ Far-Mar-Co argues that the trial court clearly erred in finding support in the parent for the moisture content limitations. The trial court considered (1) evidence that the purpose of moisture in the mix was to make the material flow through the extruder; (2) the physical characteristics of mixtures with varying levels of water; (3) the type of test and degree of accuracy in testing for moisture level; and (4) the approximate amount of moisture known by those skilled in the art to be contained in soybean meal. Based on this evidence and the formulations disclosed in the parent application, the court allowed both parties to calculate approximate upper and lower moisture limits supportable by the parent application. It found inadequate descriptive support in the parent application for the moisture limitations of "at least about 20%" and of those claims calling for a total moisture content "between about 20% and 40% by weight," and the parties do not contest these findings. The court found adequate support for moisture levels of "at least about 25% by weight," "at least 25% by weight," and "in the range of 20–30% of the resulting mixture." The trial court noted that claims simply calling for sufficient water to permit the resulting mixture to be passed through an extruder or calling for approximately 25% of the mixture were not challenged. The trial court's rationale for striking down the claims with endpoints of 20% and 40% was that these limits could not be justified solely by the so-called ball test for moisture content. Those claims would convey new information to one skilled in the art. The open-ended claims, however, would be limited by what a person skilled in the art would understand to be workable. After careful consideration of Far-Mar-Co's arguments, we conclude that the court did not clearly err in determining that the parent's disclosure adequately supported the water ranges of "at least about 25% by weight," and "at least 25% by weight." The court, however, did clearly err in finding support in the parent for the limitation: "in the range of

20%–30% of the resulting mixture" contained in claims 19, 27, and 28. We hold these claims are entitled only to the effective filing date of the 1966 application and are therefore invalid for having been anticipated by the Dutch publication.

Far-Mar-Co's argument that the parent application requires fiber formation inside the extruder is adequately disposed of by the trial court's opinion.

In sum we conclude that claims 10–13, 15–18, 20–26, and 32 of the Flier patent are entitled to the effective filing date of the 1964 parent application because the parent application adequately supports those claims for purposes of 35 U.S.C. § 120.

### Willful Infringement

A finding of willful infringement is a question of fact and is not reversible upon appeal unless shown to be clearly erroneous. *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389, 219 USPQ 569, 576 (Fed.Cir.1983). Far-Mar-Co has failed to persuade us that the district court's finding is clearly erroneous.

The trial court found willful infringement based on Far-Mar-Co's "conduct after issuance of the patent, particularly the decision to respond to plaintiff's offer of a license without consulting patent counsel." When a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing. *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d at 1389–90, 219 USPQ at 576. Such an affirmative duty usually includes, inter alia, the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity. *Id. See also, King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867, 226 USPQ 402, 412 (1985). The offering of a license is actual notice. *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 743, 220 USPQ 845, 851 (Fed.Cir.1984).

Far-Mar-Co's argument that it did not infringe willfully because Ralston withdrew its offer too quickly is unpersuasive.

There is evidence of record that Far-Mar-Co has known of its potential infringement liability to Ralston since 1970. At that time, Ralston was involved in an interference proceeding with other parties, one of whom was Far-Mar-Co's licensor. Far-Mar-Co received notice that Ralston won the interference in April, 1972. After the Ralston patent issued in 1976, Far-Mar-Co rejected a license offer without even consulting its own in-house patent counsel. Far-Mar-Co cites no precedent for a decision that an infringer must be allowed a certain amount of time to "develop" willfulness, and we will not supply it. On the basis of this record, we cannot say the court clearly erred in its finding.

Accordingly, we agree with the district court's decision that claims 10–13, 15–18, 20–26, and 32 of the Flier patent have not been shown to be invalid. We *affirm* the holding of infringement of claims 10–13, 15–18, 20, 22, 23, and 32. We hold claims 1–9, 14, 19, 27–31, and 33–52 to be invalid. Finally, we *affirm* the finding of willful infringement.

AFFIRMED–IN–PART AND REVERSED–IN–PART.

JACK R. MILLER, Senior Circuit Judge, dissenting in part and concurring in part.

I cannot agree with the section in the majority opinion concerning the "written description" requirements of 35 U.S.C. § 112, first paragraph with respect to claims 10–13, 15–28, and 32.

It is necessary that Flier be entitled to its grandparent application's filing date under 35 U.S.C. § 120 if it is to avoid the invalidating effect of the ADM anticipating reference under 35 U.S.C. § 102(a). To be entitled to the benefit of the date of a previously filed copending application under section 120, such application must contain a written description of the invention claimed, and of the manner and process of making and using it, as set forth in the later application to comply with the first paragraph of section 112.

The invention claimed in the later application does not have to be described in the

prior application *in ipsis verbis* in order to satisfy the description requirement of section 112. *Martin v. Johnson,* 454 F.2d 746, 751, 172 USPQ 391, 395 (CCPA 1972); *see Case v. CPC International, Inc.,* 730 F.2d 745, 751, 221 USPQ 196, 201 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 223, 83 L.Ed.2d 152, 224 USPQ 736 (1984). However, claims with no explicit disclosure must find inherent support in the prior application, *Pingree v. Hull,* 518 F.2d 624, 186 USPQ 248 (CCPA 1975); and one skilled in the art, *following the teaching* of the prior application must be able to produce the subject matter of the later claims. *In re Magerlein,* 346 F.2d 609, 612, 145 USPQ 683, 685 (CCPA 1965); *In re Nathan,* 328 F.2d 1005, 1008–09, 140 USPQ 601, 604 (CCPA 1964). Thus, the test for determining whether the disclosure complies with the written description of the invention requirement is whether it would have reasonably conveyed to one of ordinary skill that the inventor invented the later-claimed subject matter. *In re Kaslow,* 707 F.2d 1366, 1375, 217 USPQ 1089, 1096 (Fed.Cir.1983). The "legal" equivalent of the claim language is thus the *"necessary and only reasonable* construction" to be given the disclosure in the parent application by one skilled in the art. *In re Filstrup,* 251 F.2d 850, 853, 116 USPQ 440, 442 (CCPA 1958). The result claimed must "inevitably occur." *See Kooi v. DeWitt,* 546 F.2d 403, 409, 192 USPQ 268, 273 (CCPA 1976); *Pingree,* 518 F.2d at 627, 186 USPQ at 251.

Section 112 does not refer to a mere "support" standard. In *In re Smith,* 458 F.2d 1389, 1394, 173 USPQ 679, 683 (CCPA 1972), the court stated that "[t]he recent cases suggests [*sic* ] a more stringent requirement for a description of the claimed invention than may have been previously applied in cases wherein the issue was framed in terms of 'support' for claimed subject matter." The original disclosure may not be relied upon unless it "constitute[s] a full, clear, concise and exact description ... of the invention claimed" in the patent to one of ordinary skill. *In re*

*Wertheim,* 646 F.2d 527, 538–39, 209 USPQ 554, 565 (CCPA 1981) (*"Wertheim II "*).

The test of adequacy of disclosure is neither anticipation (*e.g., In re Scheiber,* 587 F.2d 59, 199 USPQ 782 (CCPA 1978) ) nor obviousness (*see, e.g., In re Piasecki,* 745 F.2d 1468, 1473, 223 USPQ 785, 789 (Fed.Cir.1984)·). Thus, it is not proper under section 112 to require that a person of ordinary skill determine by "extrapolation, interpolation and assumptions" (*Ex parte Eggleston,* 159 USPQ 692, 693 (PTO Bd. App.1967) ) that disclosure in the prior application would achieve a product possessing characteristics of, or operating within the ranges of numerical values set forth in, the later claimed subject matter. *In re Wertheim,* 541 F.2d 257, 191 USPQ 90 (CCPA 1976) (*"Wertheim I "*), *later appealed,* 646 F.2d 527, 209 USPQ 554 (CCPA 1981).

To carry its burden of demonstrating insufficient disclosure, Far-Mar-Co must show that the grandparent application would not have taught persons skilled in the art that the ranges of each item claimed in the patent claims were Flier's invention.[1]

With respect to protein content of the soybean meal, Far-Mar-Co asserts that the requirements in the Flier patent claims for "vegetable material having a protein content of at least about that of solvent-extracted soybean meal" (claims 15–17 and 32) and for "solvent-extracted soybean material having a protein content at least about that of solvent-extracted soybean meal" (claims 18–26) are not inherent in the grandparent specification, since each claim limitation is an open-ended range of up to 100% protein.

The grandparent contains the following references to soybean meal protein:

It has been found that soybean meal having a low fat and *high protein content* may be treated to form the desirable products of the present invention. Preferably the soybean meal has a fat content as low as 0.5% and a *protein con-*

---

**1.** The sufficiency of Far-Mar-Co's *prima facie* case is not at issue, since the district court

evidently considered all of the evidence produced by both parties.

tent of approximately 50%. Such *50% protein soybean meal* is well known and frequently is a by-product of the process of oil extraction from soybeans....

....

*Example 1* As a specific example, 17 pounds of 50% *soybean meal having a protein content of 50%*, a fat content of....

*Example 2*

....

*Soybean meal having a protein content of approximately 50%* is the preferred meal component for use in practicing the present invention. *When, however, the meal has a protein content of substantially less than 50%*, it may be mixed with a high protein component which will *increase the protein content of the combination to the preferred 50%.*

(Emphasis supplied.) The district court noted that most of the references to protein concentrations in the grandparent application emphasize the importance of "approximately" 50% protein soybean meal. It also found that in Example 2 the grandparent indicates that soybean meal lacking sufficient protein concentration may be altered to produce the preferred percentage.

The court also referred to the Soybean Blue Book for 1964 and the Yearbook and Trading Rules for 1964–1965, in which it found reflected the knowledge in the art that the protein content of 50% solvent-extracted soybean meal was "minimum 50%" and that 44% soybean meal was also available. The court also noted that soybean protein concentrate and soybean protein isolate (not soybean meal as the majority opinion suggests), with protein concentrations over 50%, were "well known" in the art in 1964.

I am persuaded that the district court erred when it found from these references (in combination with the grandparent specification disclosure of "about 50%" and "approximately 50%" protein) that "[i]t is doubtful that a person skilled in the art would ... have construed from the parents [sic] disclosure a maximum protein limit of about 50%." (Finding 139.) By assuming

that those of ordinary skill in 1964 would have had additional reference materials for use in creating limitations in the grandparent specification, the court erroneously applied an obviousness analysis, transgressing this court's declaration in *Piasecki*, 745 F.2d at 1473, 223 USPQ at 789, and *In re Shetty*, 566 F.2d 81, 86, 195 USPQ 753, 756 (CCPA 1977), *reh'g denied* (Jan. 19, 1978), that the specification itself must be the source of its interpretation (with respect to scope) for one of ordinary skill. *In re Ruschig*, 379 F.2d 990, 995–96, 154 USPQ 118, 123 (CCPA 1967).

The district court also found that "[a]djustment of the protein content of soybean meal to a level above 50% is reasonably conveyed where the disclosure set forth a requirement of a 'high protein content,' disclosed the preferred level but no upper limit...." By taking this language out of context, the court erred in its interpretation of the specification. The language should have been read *in pari materia* with the sentence that follows it, which clearly indicates that Flier equated "high protein content" with "approximately 50%." I disagree with the gloss imposed on the language of the grandparent application by the majority opinion. The *patent* claim language is not the only *"necessary and reasonable"* construction of the language in the grandparent application (*In re Filstrup*, 251 F.2d at 853, 116 USPQ at 442), and a "level above 50%" is not the "inevitable" interpretation of "about," "approximately," or even "preferably" 50%. *Cf. Kropa v. Robie*, 187 F.2d 150, 154–55, 88 USPQ 478, 483 (CCPA 1951).

The district court conceded that the "open-ended range of from about 50% to 100%" is "in part predicated on the assumption that solvent-extracted soybean meal contains about 50% protein." If this means, as the majority asserts, that the district court found that the grandparent application discloses a "preferred lower limit," such finding is clearly erroneous. The grandparent application does state that 50% protein meal was the preferred concentration. However, in view of the language in the grandparent application expressing

Flier's knowledge that "substantially less than 50%" protein was a class of protein concentrations known to him at that time (which concentrations were readily raised to the preferred 50%), I cannot agree that the grandparent taught 50% protein concentration as a "preferred lower limit." Rather, if "preferred" is to be interpreted as a limitation, the more reasonable construction in this case would be as an upper limit. I conclude that the district court erred in finding that the Flier patent claims containing limitations on protein content of soybean meal were sufficiently disclosed in the 1964 grandparent application.

With respect to moisture content, Far-Mar-Co contends that the district court erred in concluding that the Flier claims limitations were sufficiently disclosed in the grandparent application. The 1964 grandparent recites, in the examples, 17 pounds of soybean meal "mixed with 2600 cc. of water" or 2850 cc. (It is undisputed that 2600 and 2850 cc. are 25 and 27% by weight, respectively, of the mixtures recited in the examples.) The claims limitations refer to "at least about 25% by weight" (claims 10–13) and "at least 25% by weight" (claims 15–17, 32).

These findings by the district court suffer from the same infirmities as do those with respect to protein concentration. Although written disclosure cases must be determined on a case-by-case basis (*e.g., In re Driscoll*, 562 F.2d 1245, 1250, 195 USPQ 434, 438 (CCPA 1977)) *Wertheim I, supra,* opposes extending, without limitation, the range of the only examples stated in the prior application in a situation similar to the present claims 10–13, 15–17, and 32. *See In re Ahlbrecht*, 435 F.2d 908, 168 USPQ 293 (CCPA 1971); *Smith*, 458 F.2d at 1394–95, 173 USPQ at 683 (disclosure of genus and one species not sufficient description of intermediate subgenus). Certainly, genera and subgenera ranges which substantially deviate from the two species disclosed in the grandparent are not sufficiently described when there is no suggestion to those skilled in the art that such ranges of moisture are embraced by the original invention.

In reaching its conclusions, the district court relied on (1) "the practice" at Ralston in 1964, (2) "squeeze test," and (3) knowledge of those skilled in the art of the moisture content of soybean meal. It should be pointed out that "the practice" at Ralston in 1964 does not even appear to be within the knowledge of one of ordinary skill, and neither a "squeeze test" nor the importance of the moisture content of soybean meal is suggested in the grandparent application. *Cf. In re Salmon*, 705 F.2d 1579, 1581, 217 USPQ 981, 983 (Fed.Cir. 1983); *Wertheim I*, 541 F.2d at 267–68, 191 USPQ at 101. I am persuaded that the district court's findings on moisture content limitations are clearly erroneous.

Far-Mar-Co also contests the findings of the district court on the issue of the range of processing temperatures. The 1964 application recites a range of 212–360°F in one example and states elsewhere that the mixture "must be subjected to heat ... during the extrusion process." The Flier patent claims recite "in excess of 212°F" (claim 10) and "substantially above 212°F" (claims 11–13, 15–16, 28, and 32). These findings of the court are subject to the same criticism as are those relating to moisture content. The reasoning in *Wertheim I, Ahlbrecht,* and *Smith* applies to the limitations in claims 10, 15–16, 28, and 32. "[I]nto the range of 212–310°F" (claim 27) requires further discussion, because this range is totally within the range explicitly disclosed in the grandparent.

The court in *Wertheim II* held that the disclosure in the parent of 25% to 60% solids content, without more, did not satisfy the description requirement of the later claimed 35% to 60% solids concentration, because the claimed range was a significant restriction on the invention. 646 F.2d at 538, 209 USPQ at 565. Analogous is claim 27, in which Ralston attempts to rely upon the grandparent's disclosure of 212–380°F. Although it is likely, as the district court states, that "the skilled artisan would observe a practical upper limit of avoiding burning or scorching material passing through the extruder" (Finding 151), the ADM reference indicates that extrusion temperatures of 450°F were feasible in

1965. Without any suggestion in the grandparent that temperatures above 310°F would damage the product, there is no "inevitable" or "necessary and only reasonable construction" of the grandparent's disclosure as having the upper limit of 310°F in claim 27. *Cf. In re Salmon*, 705 F.2d at 1581, 217 USPQ at 983.

Finally, on the issue of situs of fiber formation (claims 10–13, 15–28, and 32), I concur with the majority opinion that Far-Mar-Co has not demonstrated that the district court clearly erred. Although Flier did not know in 1964 where fiber formation occurred, I am persuaded that one of ordinary skill in the art would have been taught by the grandparent disclosure how the invention was practiced. *See Spero v. Ringold*, 377 F.2d 652, 656, 153 USPQ 726, 728–29 (CCPA 1967); *In re Magerlein*, 346 F.2d at 611–12, 145 USPQ at 685. The

invention "may well [have been] disclosed without positive identification." *Petisi v. Rennhard*, 363 F.2d 903, 907, 150 USPQ 669, 672 (CCPA 1966); *see Foss v. Oglesby*, 127 F.2d 312, 317, 53 USPQ 356, 361 (CCPA 1942).

In view of the foregoing, Ralston cannot rely on Flier's 1964 grandparent application for priority under sections 112 and 120 for claims 10–13, 15–28, and 32. Thus, these claims are rendered invalid by the ADM anticipating reference.

I do not join the majority on the issue of willfulness because it is rendered moot in light of my dissent.