5 F.3d 1504
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 FMT CORPORATION, INC., Plaintiff/Cross-Appellant,
v.
NISSEI ASB COMPANY, Defendant-Appellant.
 Nos. 92-1337, 92-1357.
 United States Court of Appeals, Federal Circuit.
 Aug. 2, 1993.
 
 Before RICH, MICHEL and PLAGER, Circuit Judges.
 DECISION
 RICH, Circuit Judge.
 
 
 1
 This patent infringement suit was filed by plaintiff, FMT Corporation, Inc. (FMT), against defendant, Nissei ASB Company (Nissei) in the United States District Court for the Northern District of Georgia. The technology generally involves parisons or preforms used to make plastic containers. Nissei appeals from the district court's April 2, 1992 judgment finding U.S. Patent Nos. 4,432,530, 4,521,369, and 4,588,620 (the '530, '369, and '620 patents, respectively) not invalid and infringed by 35 of Nissei's 108 parison designs; FMT cross-appeals from the judgment finding the remaining 73 parison designs do not infringe. We affirm.
 
 DISCUSSION
 
 2
 The three patents in issue are derived from the same parent application and are linked by the common subject matter of a parison design. The '530 patent is directed to a mold and core rod combination for the injection molding of a parison. The '369 patent is directed to a process for manufacturing plastic containers, including the steps of making an injection molded parison and blowing the parison into a container. The '620 patent is directed to the parison which would be formed by injecting the plastic into the mold/core rod combination specified in the '530 patent. The parties agree that if Nissei produces a parison in a mold/core rod combination that infringes claim 1 of the '530 patent, then that parison itself infringes claim 1 of the '620 patent. Likewise, if a Nissei machine uses one of the mold/core rod combinations specified in the '530 patent, then Nissei infringes claim 1 of the '369 patent.
 
 
 3
 Claim 1 of the '530 patent reads, in pertinent part, as follows:
 
 
 4
 A plastic mold-core rod combination for forming an injection molded plastic parison having a bottom, a sidewall, a shoulder, and a neck finish comprising a female parison mold having a flat area at the bottom surface ... and a core rod ... constructed and arranged to mate and form a cavity having a bottom area thickness, a sidewall area thickness and an annular corner area thickness connecting said bottom and sidewall areas, said bottom area thickness and annular corner area thickness being less than said sidewall area thickness and having a rapid transition from the thickness at the middle of said bottom cavity area to said sidewall cavity area of greater thickness, said sidewall thickness being substantially constant from said annular corner surface to the shoulder. [Emphasis ours.]
 
 
 5
 Both Nissei and FMT argue that the trial court erred in interpreting the claims at issue, and in finding infringement and noninfringement, respectively.[1] In order to determine whether the Nissei parisons infringe, the court must take a two step approach: first, the claims must be properly construed to determine their scope and, second, the court must determine whether the properly interpreted claims encompass the accused structure. LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n, 867 F.2d 1572, 1574, 9 USPQ2d 1995, 1997 (Fed.Cir.1989). A trial court's overall claim construction is reviewable as a matter of law, but findings on disputed meanings of terms in the claims and on the infringement issue must be shown to have been clearly erroneous. Perini America, Inc. v. Paper Converting Machine Co., 832 F.2d 581, 584, 4 USPQ2d 1621, 1624 (Fed.Cir.1987).
 
 
 6
 The court found nothing in the specification or prosecution history to lead it to modify or limit the plain meaning of the claims and rejected the parties' attempts to add any limitations not articulated in the claims. The district court found that the parisons at issue must meet three claim limitations to infringe: (1) sidewalls of substantially uniform thickness; (b) a bottom that is thinner than the thickness of the sidewalls and which contains a flat area or portion; and (3) a rapid transition from the thinness of the bottom to the thickness of the sidewalls. The district court recognized that the '530 patent was allowed over the prior art based on the relative thicknesses of the bottom, annular corner and sidewalls of the parison. Neither party has shown that the court's claim interpretation is erroneous.
 
 
 7
 The district court examined the 108 illustrations of the parison designs at issue and initially determined that 35 of the parisons infringe and 35 do not infringe. The court withheld judgment on the remaining 38 parison designs until its February 5, 1992 order in which it determined that FMT failed to meet its burden of proving that these parisons infringe.
 
 
 8
 Nissei argues that the court's finding that 35 of the 108 parisons infringe is clearly erroneous because its parisons have a "gate" designed into the bottom walls of the parisons that renders the parisons noninfringing. Nissei identifies evidence that (1) the gates allegedly perform certain functions not performed by the patented parisons, (2) the gates add to the thickness of the bottom wall thereby precluding the bottom wall from being thinner than the side wall as required by the claims, and (3) the presence of the gate prevents the bottom of the parison from being geometrically flat. However, Nissei's arguments merely repeat the arguments made before and rejected by the district court in light of other evidence proffered by FMT. After examining all of the evidence, the court concluded that "neither the presence nor the function of the Nissei gates affect the determination of whether Nissei is infringing the patents in suit." When the trial court has chosen between two permissible views of the evidence, its choice cannot be clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985); Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1531, 3 USPQ2d 1321, 1323 (Fed.Cir.1987). Since Nissei has failed to establish that the district court's decision was clearly erroneous, we affirm this portion of the district court's judgment. Nissei also appeals the district court's dismissal of Nissei's validity and enforceability defenses for lack of proof.[2] To invalidate the FMT patents, Nissei had the burden to establish invalidity by clear and convincing evidence. Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 961, 1 USPQ2d 1196, 1200 (Fed.Cir.1986). If Nissei fails to establish a legally sufficient prima facie case of invalidity, FMT is not required to present evidence to the contrary and the dismissal of the invalidity defense must be affirmed. Ralston Purina Co. v. Far-Mar-Co. Inc., 772 F.2d 1570, 1573, 227 USPQ 177, 178 (Fed.Cir.1985). The district court found that Nissei failed to meet its burden and dismissed all those defenses. Nissei has chosen to appeal them all. After careful consideration of all of Nissei's arguments, we find that the district court's decision to dismiss the defenses was not clearly erroneous.
 
 
 9
 In the cross-appeal, FMT's first argument is one of claim construction. According to FMT, the district court should have construed the terms "rapid transition" to mean "a rapid transition in temperature" based on the testimony of its expert. However, FMT's argument that the district court was required to accept the testimony of its expert is not supported by any precedent. The district court chose to interpret "rapid transition" in geometric terms based on the specification, prosecution history, and the claims themselves, wherein we find no support for FMT's construction.
 
 
 10
 On the issue of noninfringement, FMT argues that the district court erred in finding the 37 parisons listed in Addendum B and the 35 parisons listed in Addendum C do not infringe. The district court held that the parisons in Addendum B, do not infringe because they either (1) do not show a flat portion on its bottom or (2) do not show a rapid transition between the flat thinner bottom and the relatively thicker sidewalls. With respect to the Nissei parisons listed in Addendum C, the district court held that FMT failed to sustain its burden of proof that the parisons infringe.
 
 
 11
 FMT merely takes the opposite position and argues that the parisons do contain a flat portion and a rapid transition and infringe, either literally or under the doctrine of equivalents. However, this argument erroneously presumes that the district court accepted FMT's interpretation that a rapid transition means a rapid transition in temperature. This is not supported by the record.[3] We have reviewed the parison illustrations at issue and are persuaded that the court's non-infringement findings are not clearly erroneous. Accordingly, we affirm this portion of the court's judgment.
 
 
 12
 Neither FMT nor Nissei has convinced us that the district court erred. Accordingly the district court's judgment is affirmed.
 
 
 
 [1]
 Nissei raises at least sixteen issues on appeal attacking virtually every finding made by the district court. Nissei misconceives the role of the appellate court and the nature of the appellate process. The court does not sit to consider evidence de novo and is not a forum in which to re-try one's case lost before the district court. It is appellant's burden to show that the trial court's findings are clearly erroneous in light of the evidence of record
 
 
 [2]
 Nissei's arguments confuse the issues of infringement and validity. It argues that the district court erred by (1) misconstruing the claim term "rapid transition" to include "gradual transitions" and (2) by applying the indefinite term "rapid transition" to conclude the Nissei parisons infringe. These arguments pertain to indefiniteness which is a validity issue. Under the law pertaining to indefiniteness, if the claims, read in light of the specification, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more. Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1385, 231 USPQ 81, 94 (Fed.Cir.1986), cert. denied, 480 U.S. 947 (1987). The only evidence proffered by Nissei on this issue was the testimony of its expert that the term "rapid transition" meant nothing to him. However, he also testified that he would understand the terms "sudden transition." We see no distinction between the two terms and agree with FMT that "sudden" and "rapid" are synonymous
 
 
 [3]
 Furthermore, we find no error in the court's failure to consider the thermal profiles submitted by FMT which are not necessary to make an infringement determination. Given the court's interpretation of the claims, the court was able to determine the infringement issue based on an examination of the illustrations of the parison designs