29 F.3d 644
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Donald S. GOLD.
 No. 94-1038.
 United States Court of Appeals, Federal Circuit.
 May 31, 1994.
 
 Before MAYER, LOURIE, and SCHALL, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Appellant, Donald S. Gold, appeals from the August 18, 1993 decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), denying reconsideration of its January 14, 1993 initial decision, Appeal No. 92-3117. In both the initial decision and the reconsideration decision, the Board, inter alia, (i) sustained the examiner's rejection of claims 1-3, 6-8, 12, and 14-16 under 35 U.S.C. Sec. 102(b) (1988) as being anticipated either by U.S. Patent No. 3,802,115 (Auten ), or U.S. Patent No. 3,705,465 (Charney ), or both; and (ii) sustained the examiner's rejection of claims 4-6, 9, 13, 14, and 17-19 under 35 U.S.C. Sec. 103 (1988) as being obvious in view of Auten, Charney, and U.S. Patent No. 4,968,283 (Montgomery ). Because the Board improperly failed to accord patentable significance to limitations found in the preambles of the rejected claims, we reverse.
 
 DISCUSSION
 I.
 
 2
 Gold's patent application, U.S. Serial No. 07/622,654, generally relates to a device that allows skin divers to signal each other underwater in a primitive manner. More specifically, Gold's apparatus essentially consists of a container intended to be held in the hand of a skin diver, and loosely encapsulating therein a number of noise-making objects. When vigorously shaken underwater by the skin diver, the apparatus presumably emits sound audible to other skin divers present within a certain radius. Although Gold disputes the characterization as being overly simplistic, we find particularly informative the description of the claimed invention as an "underwater rattle."
 
 
 3
 On appeal, Gold does not argue separately each rejected claim, but rather rests on claim 1 as being representative of the claims rejected under 35 U.S.C. Sec. 102(b), and on claim 4 as being representative of the claims rejected under 35 U.S.C. Sec. 103. Accordingly, the 35 U.S.C. Secs. 102(b) and 103 rejections of the other rejected claims stand or fall depending on our decision regarding representative claims 1 and 4, respectively. See In re King, 801 F.2d 1324, 1325, 231 USPQ 136, 137 (Fed.Cir.1986). Claim 1 recites:
 
 
 4
 A hand held underwater signaling device for use by human skin divers comprising: an enclosed container; and one or more non-resilient objects contained within said container, wherein each said object is loosely-packed in said container such that vigorous manual displacement by the diver of said container will cause each said object to independently move and impact with an inner surface of said container causing audible sound vibrations to emanate therefrom.
 
 Claim 4 recites:
 
 5
 A signaling device as in claim [1, wherein said container has a cylindrical shape, and] wherein a center section of said container consists of a pipe section constructed of polyvinyl chloride [PVC].
 
 
 6
 With respect to the rejection under 35 U.S.C. Sec. 102(b), Gold argued, inter alia, that the preamble, because it is essential to point out the invention as defined in the claim, is the source of two key limitations not disclosed in the cited references:
 
 
 7
 (1) it is a "hand held" device which the diver can "vigorously" shake underwater, and (2) ... when vigorously shaken, the device produces sounds audible to humans underwater.
 
 
 8
 Gold contended that the small size and the presence of a hook in the prior art fishing lures disclosed in Auten and Charney prevented those devices either from being "hand held" or "vigorously shaken" to produce underwater sound audible to humans.
 
 
 9
 The Board, however, disagreed and explicitly refused to accord any patentable significance to the preamble of claim 1, regarding the language, "[a] hand held underwater signaling device for use by human skin divers," to be a mere statement of intended use rather than a recitation of limiting structure. Consequently, the Board found that
 
 
 10
 none of the appealed claims recites that the signalling device is or is in any way adapted to be hand shaken to produce the audible sounds; nor are the claims limited to the production of those sounds underwater; nor are the claims limited to the production of sounds audible to humans underwater.
 
 
 11
 Using this construction, the Board found that each and every limitation of claim 1 was either expressly or inherently described in both Auten and Charney, as demonstrated below:
 
 
 12
 Limitation Anticipating Disclosure
 
 
 13
 ------------------------------------------- ----------------------------------
 
 
 14
 an enclosed container Auten (fig. 5, ref. 15);
 
 Charney (fig. 1, ref. 2)
 
 15
 one or more non-resilient Auten (fig. 5, ref. 18);
 
 
 16
 objects within container Charney (fig. 1, ref. 22)
 
 
 17
 object is loosely packed Auten (col. 2, lines 45-51);
 
 
 18
 in container such that vigorous manual Charney (col. 2, line 66 through
 
 
 19
 displacement will cause object to move col. 3, line 2)
 
 
 20
 and impact with inner surface of
 
 
 21
 container causing audible sound.
 
 
 22
 The Board further concluded that even assuming that the preamble had a limiting effect, the devices of Auten and Charney, despite their small size and the presence of hooks therein, were each capable of being held by a human hand and shaken vigorously to produce audible sound underwater. With respect to the rejection under 35 U.S.C. Sec. 103, the Board agreed with the examiner that it would have been obvious to construct the claimed container from PVC in view of the teaching to that effect in Montgomery. The principal issue on appeal is whether the Board committed reversible error in concluding that the preambles of Gold's claims did not serve to further limit the claims.
 
 II.
 
 23
 Whether a reference anticipates a claimed invention under 35 U.S.C. Sec. 102 is a question of fact reviewed for clear error by this court. Ralston Purina Co. v. Far-Mar-Co., Inc., 772 F.2d 1570, 1574, 227 USPQ 177, 179 (Fed.Cir.1985). Whether a claim would have been obvious under 35 U.S.C. Sec. 103 in view of the prior art, on the other hand, is a question of law subject to de novo review by this court, although the ultimate legal conclusion rests on underlying issues of fact reviewed for clear error. Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 872, 228 USPQ 90, 97 (Fed.Cir.1985). A determination of anticipation or obviousness, however, necessarily hinges on the proper interpretation of a claim--an issue of law reviewed by this court de novo, at least when there are no underlying factual issues. In re Donaldson Co., 16 F.3d 1189, 1192, 29 USPQ2d 1845, 1848 (Fed.Cir.1994).
 
 
 24
 Regarding the limiting effect of the preamble on the interpretation of a claim, this court has explained:
 
 
 25
 No litmus test can be given with respect to when the introductory words of a claim, the preamble, constitute a statement of purpose for a device or are, in themselves, additional structural limitations of a claim.
 
 
 26
 Corning Glass Works v. Sumitomo Elec. U.S.A., 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966 (Fed.Cir.1989). Nevertheless, the somewhat circular, and oft-repeated rule is that language in the preamble further limits the claim if such is "necessary to give meaning to the claim[s] and properly define the invention." In re Fritch, 972 F.2d 1260, 1262, 23 USPQ2d 1780, 1781 (Fed.Cir.1992); cf. Diversitech Corp. v. Century Steps, Inc., 850 F.2d 675, 678, 7 USPQ2d 1315, 1317 (Fed.Cir.1988) (language appearing in the preamble limits the claim where "that language is essential to particularly point out the invention defined by the claims."); Loctite Corp., 781 F.2d at 866, 228 USPQ at 92 (term appearing in preamble is a "necessary limitation" where the term "breathes life and meaning into the claims."). Whether preamble language is "necessary" or "essential" is "a matter to be determined on the facts of each case in view of the claimed invention as a whole." In re Stencel, 828 F.2d 751, 754, 4 USPQ2d 1071, 1073 (Fed.Cir.1987); accord Corning Glass Works, 868 F.2d at 1257, 9 USPQ2d at 1966 ("The effect preamble language should be given can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.").
 
 III.
 
 27
 In the present case, the PTO argues that the Board correctly determined that the preamble of claim 1 was merely a statement of intended use, and did not specify any structural limitations to be accorded patentable weight. In support of its position, the PTO contends that the term "hand held" does not set forth or require any specific structure, but rather "at best merely requires a range of sizes." Moreover, the PTO asserts that the term "underwater" is merely the environment for using the apparatus, and cannot be construed as a claim limitation that the device is watertight. To do so, the PTO argues, would violate the doctrine of claim differentiation and would contradict an express statement in the specification to the contrary. The PTO further asserts that neither of the phrases "signaling device" or "for use by human skin divers" sets forth or requires any specific structure. The latter phrase, in fact, merely states who uses the device, or so says the PTO.
 
 
 28
 We disagree. The specification of the patent application makes clear that Gold was working on the particular problem of underwater signaling devices for human skin divers, and not on general improvements to rattling devices. To construe claim 1 as covering every device having loose parts inside that rattle when manually displaced "would be divorced from reality." See Corning Glass Works, 868 F.2d at 1257, 9 USPQ2d at 1966. Rather, given the broad language of the claims at issue, we agree with Gold that the limitations appearing in the preamble are essential to point out the invention as defined by the claims. Thus, the preamble language does give "life and meaning," and thereby provides further limitations that must be disclosed in the prior art for the claims to be anticipated.
 
 
 29
 When the preamble is read to give "life and meaning" to claim 1, it adds several limitations that are not anticipated by the prior art of record. In particular, the preamble language reciting that the claimed device is both "hand held " and "for use by human skin divers" modifies language appearing in the body of the claim stating that "vigorous manual displacement by the diver ... caus[es] audible sound vibrations to emanate therefrom." Reading the claim in its entirety, and in view of the specification, makes it apparent that Gold intended claim 1 to encompass only an apparatus that possesses certain physical characteristics necessary to allow the device to perform its intended function of signaling other humans underwater. Indeed, even the PTO recognizes that the phrase "hand held" requires a range of sizes. Such physical characteristics (e.g., size, weight, presence of a hand grip, etc.) facilitate a human hand fully and securely grasping a hand grip area on the apparatus and shaking it, by hand, to the extent that sound, which can be heard by other humans under the water a considerable distance away, will emanate therefrom. Significantly, this construction of claim 1 does not encompass devices that, inter alia, (i) lack a hand grip area large enough for a full and secure grasp by a human hand; (ii) generate underwater sound by any method other than vigorous underwater shaking by a human hand; (iii) are incapable of generating sound in an underwater environment; or (iv) emit sounds inaudible to other humans underwater at a considerable distance away. In view of the limiting effect of the preamble, we conclude that neither Auten nor Charney identically discloses the claimed combination of limitations recited in claim 1. See Diversitech Corp., 850 F.2d at 677, 7 USPQ2d at 1317 ("For a prior art reference to anticipate in terms of 35 U.S.C. Sec. 102, every element of the claimed invention must be identically shown in a single reference.").
 
 
 30
 We recognize that it is undisputed that the prior art Auten and Charney devices are, to some extent, capable of being held by a human hand, and, when shaken, emit at least some audible sound. However, based on a "review of the entirety of the patent," we conclude that a construction of the claim that would encompass the Auten and Charney devices would ignore what the inventor "actually invented and intended to encompass by the claim." The PTO cannot seriously contend that the Auten and Charney devices--in view of their small size, their lack of a hand grip, and the presence of hooks therein--can be fully and securely grasped by a human hand and vigorously shaken to produce underwater sound audible to another human a considerable distance away.
 
 
 31
 Therefore, the 35 U.S.C. Sec. 102(b) rejections based on Auten and Charney are reversed because each limitation of the claimed invention is not identically disclosed therein. We express no opinion as to whether it would have been obvious to modify the devices of Auten, Charney, or some other reference not of record, to render the claimed invention unpatentable under 35 U.S.C. Sec. 103, because such a rejection is not before us.
 
 
 32
 For essentially the same reason that the 35 U.S.C. Sec. 102(b) rejection of claim 1 and corresponding claims fails, the 35 U.S.C. Sec. 103 rejection of claim 4 and corresponding claims also must be reversed. Because claim 4 ultimately depends from claim 1, it necessarily includes all of the limitations of claim 1, including those residing in the preamble as identified above. However, neither the primary reference relied upon by the PTO for the obviousness rejection of claim 4, Auten, nor Charney for that matter, discloses the limitations imparted by the preamble language discussed above. Regardless of what else Montgomery may or may not disclose, the PTO relied on that reference only for the suggestion of constructing a rattle type sound producing device from PVC. Thus, the combination rejection of claim 4 with Montgomery, which is the only Sec. 103 rejection before us, must be reversed.
 
 
 33
 Each party shall bear its own costs.