NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**WILLIAM MICHAEL FREDERICK TAYLOR,**

*Plaintiff-Appellant*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**

*Defendant-Appellee*

---

2018-1048

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:16-cv-00012-LMB-JFA, United States District Judge Leonie M. Brinkema.

---

Decided:  April 3, 2020

---

WILLIAM MICHAEL FREDERICK TAYLOR, Chiddingfold, Surrey, United Kingdom, pro se.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for defendant-appellee.  Also represented by JOSEPH MATAL, MEREDITH HOPE SCHOENFELD, MAI-TRANG DUC DANG.

———————————

Before DYK, CHEN, and STOLL, *Circuit Judges.*

PER CURIAM.

William Michael Frederick Taylor ("Mr. Taylor") sued the Director of the U.S. Patent and Trademark Office ("Patent Office") under 35 U.S.C. § 145, challenging the Patent Office's rejection of U.S. Application Serial No. 10/425,553 ("the '553 application"), of which Mr. Taylor is the inventor.[1]  The district court granted summary judgment to the Patent Office, concluding that all of the '553 application's claims lack written description and are indefinite.  We *affirm* on the ground that the '553 application's claims lack written description.

## BACKGROUND

The '553 application claims priority to United Kingdom Patent Application No. GB9310175.6, filed on May 18, 1993.  The specification describes a system called "GPS Explorer."  J.A. 277.  GPS Explorer "is designed to provide information [to a user] on the move," such as "while driving, flying, sailing, riding or walking."  J.A. 277, 278.  The specification describes an "audio only version" of GPS Explorer that includes a "Destination Oriented Guidance

———————————

[1]    Mr. Taylor also challenged, in separate cases, the Patent Office's rejection of two of his related applications: U.S. Application Serial Nos. 11/807,860 ("the '860 application") and 11/391,501 ("the '501 application").  The district court consolidated the three cases, and concluded that each of the applications was unpatentable.  Mr. Taylor separately appeals the district court's decision as to the '860 application (Case No. 18-1047) and as to the '501 application (Case No. 18-1070).  Our decisions on those appeals are being issued concurrently with this decision.

Mode." J.A. 280, 282. In this mode, "[a] route from the present position to the destination will be determined from routing data." J.A. 282. The audio only version of GPS Explorer also includes a "Tour Mode," in which GPS Explorer will "point out things of interest" near the user. J.A. 281. The specification explains that in "Tour Mode":

> [t]he system will . . . provide tour guidance and point out things of interest. For example[,] when walking or driving past historic buildings or other features information about each building will be given. It's [sic] date of construction, who lived there, how it was built, if it is open to the public. The dialogue may include historic sounds, the crack of a coachman's whip, the voices of children at play, music drifting on the air, all creating the atmosphere of a bygone age.

J.A. 281.

In this mode, "[e]n route advertising" may be "inserted into tours at specified points." J.A. 285. The specification also describes a "virtual reality version" of GPS Explorer, in which "computer generated objects may be overlaid on a video picture of the real world and the resulting composite image projected for an observer wearing an artificial reality helmet." *Id.* at 287. The specification provides two examples of this "virtual reality version":

> The device enables a fire or rescue crew visiting say an oil rig to superimpose structural, electrical or hazard data onto their real[-]world view of the structure, giving them safety related information and audible hazard alerts.

> The device would also enable a user visiting the site for a new building to see the computer[-]generated image of the new building superimposed in the landscape. The computer[-]generated image will

change as the user's GPS position changes when he walks around the site.

J.A. 288.

Each of the '553 application's pending independent claims—claims 206 and 220—is directed to the combination of these features.  Claim 206 recites:

An information system on a portable device for presenting information to a user, comprising:

an input device which receives a [sic] one or more specified modes of operation of the portable device from the user;

a sensing device automatically sensing a position of the portable device;

an orientation determining device which determines a device orientation of the portable device[;]

a processing device, responsive to the sensing device, configured to access one or more databases that contain entries, the entries containing information on one or more things of interest at one or more locations, the processing device determining at least one entry, from among the entries, based on the sensed position;

a presentation device, responsive to the processing device, presenting to the user a video picture of the real world that represents the user's real world frame of reference from the sensed position and the sensed device orientation, and overlaying on the video picture of the real world, based on the specified mode of operation, a computer-generated representation of the determined at least one entry,

wherein the processing device <u>further selects advertising information based on the sensed position</u>, and the presentation device <u>presents the selected advertising information to the user when presenting the video picture of the real world with the overlaid computer-generated representation of the determined at least one entry</u>;

receiving a user input selecting a portion of the video picture and providing, in response to the input user selection, more detailed information related to the selected portion,

<u>determining route guidance</u> from the sensed position to a location associated with input user selection; and

presenting the determined route guidance to the user.

J.A. 67 (emphasis added). Claim 220 similarly recites:

A method for providing information to a user on a portable device, comprising the computer-implemented steps of:

receiving one or more specified modes of operation of the portable device form [sic] the user

automatically sensing a position of the portable device;

determining a device orientation of the portable device;

determining, based on the sensed position, at least one entry from a database containing entries providing information on one or

> more things of interest at one or more locations;
>
> presenting to the user a video picture of the real world that represents the user's real world frame of reference from the sensed position and the device orientation, and overlaying on the video picture of the real world, based on the specified mode of operation, a computer generated representation of the determined at least one entry,
>
> receiving a user input selecting a portion of the video picture, and providing, in response to the input user selection, more detailed information related to the selected position,
>
> determining route guidance from the sensed position to a location associated with input user selection; and
>
> presenting the determined route guidance to the user.

J.A. 67–68 (emphasis added).

In a final Office Action, the examiner rejected claims 206 and 220 as indefinite, obvious in light of several prior art references, and lacking written description. The Patent Trial and Appeal Board ("Board") affirmed the examiner's written description and indefiniteness rejections. Board reversed the examiner's obviousness rejections, reasoning that the claims were too indefinite for the Board to "make a proper review of the prior art rejections." J.A. 8530. The Board denied Mr. Taylor's request for rehearing.

Mr. Taylor then filed a complaint under 35 U.S.C. § 145 in district court, seeking judgment that the '553 application's claims were patentable. J.A. 2. The district court granted summary judgment to the Patent Office,

concluding that "the '553 [a]pplication fails on both written description and definiteness," J.A. 45, and denied Mr. Taylor's motion for reconsideration.

Mr. Taylor appeals. We have jurisdiction to review the district court's decision under 28 U.S.C. § 1295(a)(4)(C). On appeal, we reach only the written description issue.

## DISCUSSION

We review the district court's grant or denial of summary judgment de novo. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005). Under the written description requirement for patentability, the specification "must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'" *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)) (alteration in original). Written description is a question of fact. *Id.* (citing *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)).

The Board concluded that the claims lacked written description because they covered—yet the specification did not sufficiently disclose—a presentation device providing:

> (1) a video picture of the real world based on the user's sensed position and orientation; (2) an overlaid, computer-generated representation of an entry retrieved from a database based on the user's sensed position and specified mode of operation; (3) selected advertising based on the user's sensed position and presented on the video picture of the real

world with the overlaid computer-generated representation;[2] and (4) route guidance.

J.A. 8521–22 (Board opinion). The Board explained that although some aspects of these features are disclosed separately, the specification "does not sufficiently disclose to the skilled artisan how all of this information is generated and presented to the user simultaneously." J.A. 8522–23 (emphasis added). The district court agreed, as do we.

The district court correctly construed the claims to require simultaneously "presenting . . . a video picture of the real world" and "overlaying . . . based on the specified mode of operation, a computer[-]generated representation of" a point-of-interest entry. Mr. Taylor's argument that "simultaneity is not specified" by the claims, Appellant's Br. 68, is belied by the language of the claims themselves, which recite three (claim 220) or all four (claim 206) of these features being presented concurrently.

The district court correctly concluded that, in light of this construction, the claims lack written description. The claimed features—to the extent that they are disclosed in the specification—are part of one or the other of two separate "version[s]" of GPS Explorer (i.e., the "audio only version" or the "virtual reality version"). J.A. 280–87. Nowhere does the specification disclose integration of these features into an "information system on a portable device" (as recited by claim 206) or "method" (as recited by claim 220) that presents these features simultaneously, let alone how that simultaneity is achieved. Accordingly, a person of ordinary skill in the art would not understand that the inventor possessed the subject matter claimed.

---

2    This feature is recited in claim 206 but not in claim 220.

The Patent Office's evidence supporting this conclusion was unrebutted. Dr. Peter Dana, the Patent Office's technical expert, testified that "[t]he specification is completely devoid of steps for implementing these high[-]level functions" simultaneously. Expert Report of Peter Dana, Ph.D., *Taylor v. Matal*, No. 1:15-cv-1607, ECF No. 86-1, at 14. Dr. Dana explained:

> [t]he specification provides no disclosure of how all this information is generated and presented to the user simultaneously. Where are all the video images coming from? As one example, there is no discussion of how the presentation of route guidance is performed. How is a destination selected? How does the device determine the route that one should take?

*Id.* Mr. Taylor's experts testified about some of the claimed features in isolation. For example, Mr. Miller discussed video overlays, and Mr. White, Mr. Carlton, and Dr. Whiting discussed GPS-based guidance. But none of Mr. Taylor's experts explained why a person of ordinary skill reading the specification in 1993 would understand Mr. Taylor to have invented a system or method that <u>simultaneously</u> presents all claimed features.

Mr. Taylor's own experience in attempting to implement the invention is consistent with Dr. Dana's testimony. Mr. Taylor admitted that in 1993, when he filed his initial application, "there was no internet," and that once the internet was developed he "attempt[ed] to play catchup and move from [his] previous conception [of the invention] to [one] having more of an involvement in the internet." Deposition of William Michael Frederick Taylor (day 2), *Taylor v. Matal*, No. 16-cv-12, ECF No. 51-3, at 11–12. Mr. Taylor also admitted that even after filing his application he was "waiting and waiting and waiting" for "a suitable platform to become available" to allow him to implement his idea. *Id.* at 12. Indeed, as the district court

found, Mr. Taylor's "first prototype was not operational until 1998 and neither that prototype nor the 2001 version contained all the features described in the specification, much less the claims." J.A. 65. Mr. Taylor's own testimony and experience thus shows that the specification did not demonstrate possession of the claimed invention but was instead "a 'mere wish or plan' for obtaining the claimed invention." *See Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013) (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997).

Mr. Taylor's reliance on the specification and other evidence that he contends demonstrates invention of the '553 application's claims is unavailing. That evidence, like his expert testimony, goes to whether each these four features was, in isolation, sufficiently described—not to the simultaneous presentation of these features, as claimed.

No reasonable factfinder could conclude that the '553 application meets the written description requirement. The district court did not err in granting summary judgment to the Patent Office. Because a lack of written description renders the '553 application unpatentable, we need not reach the other grounds raised on appeal.

**AFFIRMED**