NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM MICHAEL FREDERICK TAYLOR,**
*Plaintiff-Appellant*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellee*

---

2018-1070

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:15-cv-01684-LMB-JFA, United States District Judge Leonie M. Brinkema.

---

Decided:  April 3, 2020

---

WILLIAM MICHAEL FREDERICK TAYLOR, Chiddingfold, Surrey, United Kingdom, pro se.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for defendant-appellee.  Also represented by JOSEPH MATAL, MEREDITH HOPE SCHOENFELD, MAI-TRANG DUC DANG.

---

Before DYK, CHEN, and STOLL, *Circuit Judges.*

PER CURIAM.

William Michael Frederick Taylor ("Mr. Taylor") sued the Director of the U.S. Patent and Trademark Office ("Patent Office") under 35 U.S.C. § 145, challenging the Patent Office's rejection of U.S. Application Serial No. 11/391,501 ("the '501 application"), of which Mr. Taylor is the inventor.[1]  The district court granted summary judgment to the Patent Office, concluding that all of the '501 application's claims are indefinite and lack written description.  We *affirm* on the ground that the '501 application's claims lack written description.

## BACKGROUND

The '501 application claims priority to United Kingdom Patent Application No. GB9310175.6, filed on May 18, 1993.  The specification describes a system called "GPS Explorer."  J.A. 277.  GPS Explorer "is designed to provide information [to a user] on the move," such as "while driving, flying, sailing, riding or walking."  J.A. 277, 278.  The specification explains that in a "real time version" of GPS Explorer:

---

[1]    Mr. Taylor also challenged, in separate cases, the Patent Office's rejection of two of his related applications: U.S. Application Serial Nos. 10/425,553 ("the '553 application") and 11/807,860 ("the '860 application").  The district court consolidated the three cases, and concluded that each of the applications was unpatentable.  Mr. Taylor separately appeals the district court's decision as to the '553 application (Case No. 18-1048) and as to the '860 application (Case No. 18-1047).  Our decisions on those appeals are being issued concurrently with this decision.

The system selects incoming data relevant to the chosen mode of use and location based on GPS calculated position. Selected data items are stored in memory in the device on receipt and then handled in the same way as other database data described earlier.

The real time data system could provide the user with access to and automatically search a wide range of information sources: local weather, weather reports for pilots and yachtsmen, scheduled flight delays, details of special events, hotel room availability, road conditions, audio guided diversions, financial market updates for example.

J.A. 286–87 (emphasis added). The specification also describes an "audio visual version" of GPS Explorer that includes a "Simulation Mode." J.A. 285–86. In this mode:

[h]aving arrived at a physical location or identified it in pre-view mode, the user may access [a] database to obtain a computer[-]based simulation of some aspect of the location. . . . By walking around the physical site, as the GPS data changes so will the simulation to illustrate the simulated views from the new physical position taking into consideration the user[']s orientation, height, direction of view, view angle of azimuth and time of day.

J.A. 286. The independent claims of the '501 application—claims 1 and 35—are directed to storing data based on a sensed position, searching that data to select information, and presenting a simulation of that information. Claim 1 recites:

1. A system for mobile searching of information by a portable device comprising:

an input component providing data retrieval criteria from a user to a computing component of the portable device;

> a position determining component sensing a position of the portable device and providing the sensed position to the computing component of the portable device;
>
> a receiving component which receives data from data transmissions;
>
> the computing component which <u>selectively stores the received data based on the sensed position</u> and the computing component is operable to access and <u>search the selectively stored data by selecting, from the selectively stored data, information based on the sensed position</u> and the provided data retrieval criteria; and
>
> a presentation component coupled to the computing component <u>presenting to the user a simulated representation, as an aspect of the sensed position, of the selected information</u>.

J.A. 72 (emphasis added). Claim 35 recites:

> 35. A method of mobile searching of information using a portable device, the method comprising:
>
> receiving data retrieval criteria from a user;
>
> sensing a position of the portable device;
>
> receiving data from data transmissions;
>
> <u>selectively storing the received data based on the sensed position</u>;
>
> accessing and <u>searching the selectively stored data by selecting, from the selectively stored data, information on the sensed position</u> and the received data retrieval criteria; and

> presenting to the user on the portable de-
> vice a simulated representation, as an as-
> pect of the sensed position, of the selected
> information.

J.A. 74 (emphasis added).

The examiner rejected claims 1 and 35 as obvious in light of several prior art references. On appeal, the Patent Trial and Appeal Board ("Board") further rejected the claims as lacking written description and as indefinite. The Board reversed the examiner's obviousness rejections, reasoning that the claims were too indefinite for the Board to "make a proper review of the prior art rejections." J.A. 5162. The Board denied Mr. Taylor's request for rehearing.

Mr. Taylor then filed a complaint under 35 U.S.C. § 145 in district court, seeking judgment that the '501 applica-tion's claims were patentable. J.A. 2. The district court granted summary judgment to the Patent Office, conclud-ing that "the '501 [a]pplication is both indefinite and lacks written description," J.A. 54, and denied Mr. Taylor's mo-tion for reconsideration.

Mr. Taylor appeals. We have jurisdiction to review the district court's decision under 28 U.S.C. § 1295(a)(4)(C). We reach only the written description issue.

## DISCUSSION

We review the district court's grant or denial of sum-mary judgment de novo. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005). Under the writ-ten description requirement for patentability, the specifi-cation "must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'" *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)) (al-teration in original). Written description is a question of

fact. *Id.* (citing *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)).

We agree with the district court that the specification does not provide written description for the pending claims. For instance, the claims recite "selectively stor[ing] . . . received data based on the sensed position" and "access[ing] and search[ing] the selectively stored data by selecting, from the selectively stored data, information on the sensed position." The specification provides examples of data that could be retrieved: "local weather, weather reports for pilots and yachtsmen, scheduled flight delays, details of special events, hotel room availability, road conditions, audio guided diversions, [and] financial market updates." J.A. 287. But the specification does not explain how the claimed "selective[] storing," "accessing," and "searching" of this data is achieved. The Patent Office's expert, Dr. Peter Dana, testified that, without this explanation, the claims lack written description:

> While sorting and searching techniques had been well studied and published (For example, Knuth, Donald E. 1973. *The Art of Computer Programming, Volume 3: Sorting and Searching.* Menlo Park: Addison Wesley.), the specification does not discuss or describe any approach to large-scale sorting and searching required in a complex database with information that covers the wide variety of user needs alluded to.

Expert Report of Peter Dana, Ph.D., *Taylor v. Matal*, No. 1:16-cv-12, ECF No. 81-1, at 14–15. None of Mr. Taylor's experts has testified to the contrary.

The specification also does not describe the claimed <u>combination</u> of two versions of GPS Explorer. Both independent claims (claims 1 and 35) recite two distinct features. The first feature—captured by the claim limitations of "selectively stor[ing]" data "based on the sensed

position," and "search[ing] the selectively stored data by selecting, from the selectively stored data, information based on the sensed position"—has to do with retrieving location-based information as disclosed for the "real time version" of GPS Explorer. J.A. 286–87. The second feature—captured by the claim limitation of "presenting to the user on the portable device a simulated representation, as an aspect of the sensed position, of the selected information"—has to do with the "[s]imulation [m]ode" of GPS Explorer's "audio visual version." J.A. 285–86.

For instance, the specification does not describe how GPS Explorer would "tak[e] into consideration the user[']s orientation, height, direction of view, view angle of azimuth and time of day" to convert the real-time version's location-based "information sources" (e.g., "scheduled flight delays," "details of special events," or "hotel room availability") into the simulation mode's "simulated views." *See* J.A. 286–87. Moreover, some "information sources" described in the specification—for example, "audio guided diversions"—seem inherently non-visual. And although Mr. Taylor provides the testimony of several experts, none of these experts testified that a person of ordinary skill would recognize the specification to be demonstrating the invention of the claimed combination. Accordingly, a person of ordinary skill in the art would not understand that the inventor possessed the subject matter claimed.

Mr. Taylor's own experience in attempting to implement the invention further supports finding a lack of written description here. Mr. Taylor admitted that in 1993, when he filed his initial application, "there was no internet," and that once the internet was developed he "attempt[ed] to play catch-up and move from [his] previous conception [of the invention] to [one] having more of an involvement in the internet." Deposition of William Michael Frederick Taylor (day 2), *Taylor v. Matal*, No. 16-cv-12, ECF No. 51-3, at 11–12. Mr. Taylor also admitted that

even after filing his application he was "waiting and waiting and waiting and waiting" for "a suitable platform to become available" to allow him to implement his idea. *Id.* at 12. Indeed, as the district court found, Mr. Taylor's "first prototype was not operational until 1998 and neither that prototype nor the 2001 version contained all the features described in the specification, much less the claims." J.A. 65. Mr. Taylor's experience thus shows that the specification did not demonstrate possession of the claimed invention but was instead "a 'mere wish or plan' for obtaining the claimed invention." *See Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013) (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997)).

Because no reasonable factfinder could conclude that the '501 application's claims meet the written description requirement, the district court did not err in holding the claims unpatentable. We need not reach the district court's decision with respect to indefiniteness.

**AFFIRMED**